**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JUAN JOSE NAVAS MIRANDA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1254-J** |
| | ) | |
| **BRET BRADFORD[1] et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Petitioner Juan Jose Navas Miranda, a noncitizen proceeding with counsel,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1). United States District Judge Bernard M. Jones II referred the matter to the undersigned magistrate judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Respondents filed a response. (ECF No. 13). Petitioner filed a reply. (ECF No. 14). The matter is at issue.

For the reasons set forth below, the undersigned recommends the Court **GRANT IN PART** Petitioner's request for habeas relief and order Respondents to provide Petitioner with an individualized custody hearing under 8 U.S.C. § 1226(a) within ten days or otherwise release Petitioner.[3]

---

[1] The Government did not file a response on behalf of Warden Fred Figueroa, who is not a federal official. (ECF No. 13:2 n.2). Attorney General Todd Blanche is substituted for former Attorney General Pamela Bondi pursuant to Federal Rule of Civil Procedure 25(d). (ECF No. 13:1 n.1).

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3] If this recommendation is adopted, the Court should terminate ECF No. 3 as moot.

## I. BACKGROUND

Petitioner is a native and citizen of Nicaragua. (ECF No. 13-1:1). On December 12, 2022, he entered the United States on foot with his wife and son at or near the Tecate port of entry. (ECF No. 13-1:1-2). Border Patrol agents apprehended the family soon thereafter. *Id.* On December 17, 2022, the Department of Homeland Security (DHS) paroled the family into the United States under § 212(d)(5) of the Immigration and Nationality Act (INA)[4] and instructed them to report to ICE within sixty days. (ECF No. 13-1:3). Petitioner's parole documentation reflects that parole was authorized until February 10, 2023. (ECF No. 1-1:15).[5]

Petitioner then lived and worked in Texas with his family, which now includes a United States citizen son. (ECF No. 1:13). On September 12, 2025, ICE officers took Petitioner into custody when he reported to ICE's Dallas Field Office. (ECF No. 13-2:2). On October 23, 2025, DHS served Petitioner with a Notice to Appear (NTA), placed him in standard removal proceedings under 8 U.S.C. § 1229a, designated him as an "arriving alien," and charged him with being inadmissible under § 212(a)(7)(A)(i)(I) of the INA.[6] (ECF No. 13-3).

---

[4] This section is codified at 8 U.S.C. § 1182(d)(5)(A), which authorizes the Secretary of Homeland Security to parole noncitizens into the United States on a case-by-case basis for urgent humanitarian reasons or significant public benefit. *Id.* § 1182(d)(5)(A).

[5] Respondents claim Petitioner's parole "was revoked on or about September 12, 2025." (ECF No. 13:3). The document they cite does not mention parole, *see* ECF No. 13-2, and the parole stamp reflects an expiration date of February 10, 2023. Petitioner does not challenge the termination of his parole, and its timing does not affect the analysis below.

[6] This section is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), which provides that any noncitizen, who at the time of application for admission was not in possession of (1) a valid unexpired entry document as required by the INA, and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible. *Id.* § 1182(a)(7)(A)(i)(I).

Petitioner applied for asylum and withholding of removal. (ECF No. 13-4). On January 9, 2026, an Immigration Judge (IJ) ordered Petitioner removed to Ecuador or, alternatively, Guatemala. (ECF 13-6:3-4). Petitioner's appeal is pending before the Board of Immigration Appeals (BIA).[7] Petitioner's order of removal is not administratively final.[8] Petitioner remains detained at the Diamondback Correctional Facility in Watonga, Oklahoma.[9]

## II. PETITIONER'S CLAIMS

Petitioner asserts seven claims for relief: (1) unlawful detention in violation of the INA; (2) a violation of the bond regulations; (3) a violation of the Administrative Procedure Act (APA); (4) a violation of procedural due process under the Fifth Amendment; (5) a violation of substantive due process; (6) a violation of due process and the *Accardi* doctrine; and (7) a request for a stay of removal. (ECF No. 1:15-29).

Petitioner seeks his immediate release. (ECF No. 1:30-31). In the alternative, he requests a bond hearing at which the Government bears the burden of justifying his continued detention. *Id.* at 31. Petitioner also seeks an injunction barring his transfer out of this District and an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA).[10] *Id.* at 30-33.

---

[7] *See* EOIR Automated Case Information System, acis.eoir.justice.gov/en/caseInformation (last visited Sept. 28, 2026).

[8] An order of removal "shall become final upon the earlier of – (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

[9] *See* ICE Detainee Locator, locator.ice.gov/odls/#/results (last visited Sept. 28, 2026).

[10] To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this time.

## III. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. DISCUSSION

### A. Section 1226(a) Governs Petitioner's Detention

Petitioner contends his detention is governed by § 1226(a). (ECF No. 1:15-16). Respondents do not defend his detention under § 1225(b)(2)(A). (ECF No. 13:8 & n.5). They argue instead that Petitioner is an "arriving alien" subject to mandatory detention under § 1225(b)(1) because his NTA designates him as such. *Id.* at 4-8.

"[B]ecause the legality of Petitioner's continued detention depends upon the source of the Government's detention authority," the undersigned must identify the statutory basis for Petitioner's detention as a threshold matter. *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *2 (W.D. Okla. June 29, 2026).

Sections 1225 and 1226 authorize detention in different domains. Section 1225 applies primarily to aliens "seeking admission" to the United States, while § 1226 "generally governs the process of arresting and detaining" noncitizens "pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018). Section 1225 generally applies at the border and § 1226 in the interior. *See, e.g.*, *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026) ("We hold that noncitizens who entered the United States and were thereafter detained

in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A).").

Petitioner's current detention "is not part of the inspection process," and it did not "arise from an attempted entry at a port of entry." *Zhakhonov*, 2026 WL 1865418, at *3. Like the petitioner in *Zhakhonov*, Petitioner "was paroled into the United States, permitted to reside in the interior, and complied with the conditions of his release before being re-detained." *Id*. "Under those circumstances, Petitioner's detention is more naturally characterized as detention 'pending a decision on whether the alien is to be removed from the United States' within the meaning of § 1226(a)." *Id*.

This Court has consistently held that noncitizens paroled under 8 U.S.C. § 1182(d)(5)(A) and later detained by ICE within the United States are detained under § 1226(a). *See* ECF No. 16, *Arevalo Castillo v. Figueroa*, No. CIV-26-162-HE (W.D. Okla. July 7, 2026) (finding a petitioner whose humanitarian parole was terminated is entitled to an individualized bond hearing); *Ochilov v. Grant*, No. CIV-26-526-R, 2026 WL 1896139, at *1-2 (W.D. Okla. July 1, 2026) (rejecting the "theory that Petitioner retains his status as an 'arriving' noncitizen subject to mandatory detention under § 1225(b)(1) irrespective of the fact that Petitioner was released and allowed to live in the country for several years" where the petitioner may have been "paroled under 8 U.S.C. § 1182(d)(5)(A)"); *Zhakhonov*, 2026 WL 1865418, at *2-3 (finding "that Petitioner's termination of humanitarian parole did not automatically return him to mandatory detention under § 1225(b)(1)" and that "Petitioner's present detention is governed by § 1226(a)"); *Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560, at *2 (W.D. Okla. Apr. 7, 2026) (same); *Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026) ("[R]evocation of parole under § 1182(d)(5) does not render a

noncitizen in Petitioner's circumstances subject to detention under § 1225(b)(1)."); *see also Rafibaev v. Noem*, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) (finding it was "illogical to suggest that [the petitioner's] re-detention [after termination of humanitarian parole was] governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled.").[11]

### B. A Bond Hearing is the Appropriate Remedy

Because Petitioner is detained under § 1226(a), the undersigned concludes a bond hearing is the appropriate remedy.

"Unlike § 1225(b)(1), § 1226(a) contemplates individualized custody determinations and authorizes release on bond or conditional parole pending completion of removal proceedings." *Zhakhonov*, 2026 WL 1865418, at *3. Here, Respondents have held Petitioner since September 12, 2025, without an individualized custody determination. *See Id.* ("[T]he process afforded by § 1226(a) itself serves as the mechanism through which a detainee's liberty interest is protected."). Because this is "the very process Congress prescribed for detainees held pursuant to § 1226(a)," the Court should order Respondents to provide Petitioner with a bond hearing under § 1226(a). *Id.*; *see also Navarrete v. Mullin*, No. CIV-26-224-SLP, 2026 WL 2323345, at *2 (W.D. Okla. Aug. 11, 2026) (finding the level of process owed to the petitioner was "for Respondents to provide him with a bond hearing pursuant to 8 U.S.C. § 1226"); *Mesa v. Figueroa*, No.

[11] Respondents rely on § 1182(d)(5)(A)'s directive that a parolee "return or be returned to the custody from which he was paroled," and on out-of-circuit district court decisions construing it. (ECF No. 13:5-7). But § 1182(d)(5)(A) is not a source of detention authority; it provides only that upon termination of parole the noncitizen's "case shall continue to be dealt with in the same manner as that of any other applicant for admission." *See Clark v. Martinez*, 543 U.S. 371, 385 (2005) ("[W]e find nothing in [the text of § 1182(d)(5)(A)] that affirmatively authorizes detention.").

CIV-26-775-J, 2026 WL 2123868, at *2 (W.D. Okla. July 23, 2026) (holding § 1226(a) governed a re-detained parolee's detention and ordering a bond hearing rather than release).

The Court should thus grant the Petition, in part, and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within ten days or otherwise release Petitioner. *See Santillan Quiroz*, 180 F.4th at 1251 n.13 (directing district court to order the government to provide the petitioner a bond hearing within seven days "[b]ecause [the petitioner] can properly be subject to detention under § 1226(a)"); *see also Colin v. Holt*, No. CIV-25-1189-D, 2025 WL 3645176, at *6 (W.D. Okla. Dec. 16, 2025). The Court should decline Petitioner's request for immediate release, his request to require the Government to bear the burden of justifying his continued detention,[12] and his remaining requests for ancillary relief.[13]

---

[12] Petitioner asks the Court to require the Government to prove by clear and convincing evidence that he is a danger to the community or a flight risk. (ECF No. 1:31). This Court has repeatedly declined to order burden shifting at this stage. *See Zhang v. U.S. Dist. Ct.*, No. CIV-26-1022-D, 2026 WL 2323190, at *1 (W.D. Okla. Aug. 11, 2026) (declining "to place the burden on the Government to justify Petitioner's detention pending removal proceedings, at this time"); *Rangel v. Mullin*, No. CIV-26-568-D, 2026 WL 1625653, at *2 n.2 (W.D. Okla. June 5, 2026) (same). The undersigned does not recommend it here.

[13] Petitioner's requests that the Court retain jurisdiction to review the IJ's bond decision and bar ICE from invoking the automatic stay under 8 C.F.R. § 1003.19(i)(2), (ECF No. 1:31-32), are premature. No bond hearing has occurred, and should the hearing ordered here prove deficient, Petitioner may appeal the custody determination to the BIA, *see* 8 C.F.R. § 236.1(d)(3), and/or seek appropriate habeas relief. His request to enjoin his transfer is unnecessary because the Court's jurisdiction attached when he filed the Petition while confined in this District. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). And his requests for a declaration that his September 2025 arrest was unlawful, an injunction against re-detention, and production of the administrative record, (ECF No. 1:32-33), do not require any action given the recommended disposition.

### C. The Court Should Decline to Address Petitioner's Remaining Claims

Given the undersigned's recommendation to grant Petitioner a bond hearing, the Court should decline to address the merits of Petitioner's remaining claims for relief. The Court can grant him relief under § 1226(a). *See Colin*, 2025 WL 3645176, at *6 n.3 ("Because the Court grants the relief the Petitioner requests based on the applicability of 8 U.S.C. § 1226(a), the Court declines to decide the merits of Petitioner's due process claim."); *see also Ramos Perez v. Grant*, 2026 WL 2033144, at *2 n.2 (W.D. Okla. July 14, 2026) (declining to address the petitioner's remaining claims after ordering a bond hearing). The Court should also decline to reach Petitioner's APA claim because his § 2241 petition supplies another adequate remedy for his detention challenge. *See* 5 U.S.C. § 704 (limiting APA review to agency action "for which there is no other adequate remedy in a court").

Finally, the Court should dismiss Petitioner's request for a stay of removal for lack of jurisdiction. (ECF No. 1:28-29). A petition for review in the court of appeals is "the sole and exclusive means for judicial review of an order of removal," 8 U.S.C. § 1252(a)(5), and no court may hear a claim "arising from the decision or action by the Attorney General to . . . execute removal orders against any alien," *id.* § 1252(g). The request is also unnecessary, as an IJ's decision may not be executed while an appeal to the BIA is pending. *See* 8 C.F.R. § 1003.6(a).

## V. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT IN PART** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within ten days or otherwise release

Petitioner if he has not received a lawful bond hearing within that period. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within ten business days of the Court's order.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **October 6, 2026**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VI. STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on September 29, 2026.

Shon T. Erwin

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE